IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | CRIM. CASE NO.: 2:15-cr-00800 |
| vs.   ) | |
| ) | |
| ) | |
| GURNEY GRANT, JR.   ) | |
| ) | |
| DEFENDANT.   ) | |
| _____) | |

**MOTION FOR VARIANCE AND SENTENCING MEMORANDUM**

Defendant, Gurney Grant, Jr., pursuant to the decision in United States v. Booker, 543 U.S. 220 (2005), requests this Court to impose a sentence that is "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a). Those goals, the consideration of the "nature and circumstances of Mr. Grant's offense, " § 3553(a), and the other factors set forth in the statute support a sentence of less than the 97 months to 121 months called for by the United States Sentencing Guidelines.

**I.     The Sentencing Guidelines are Advisory and Non-Binding on this Court**

This Court, in arriving at the sentencing decision in this case, must, of course, consult the United States Sentencing Guidelines. See United States v. Munoz, 430 F.3d

1

1357, 1369 (11th Cir. 2005). Nonetheless, courts must also consider the other factors set out in § 3553(a):

> Although "judges must still consider the sentencing range contained in the Guidelines, . . . that range is now nothing more than a suggestion that may or may not be persuasive . . . when weighed against the numerous other considerations listed in [§ 3553(a) ]." *Id*. at 787 (Stevens, J., dissenting). Indeed, as one district judge has already observed,
>
>> the remedial majority in Booker [] direct[s] courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore. For example, under § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, his education and vocational skills, his mental and emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions, and his lack of guidance as a youth. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant.
>
> United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D.Wis.2005).

Thus, mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases are now potentially relevant in every case. United States v. Glover, 431 F.3d 744, 752-753 (11th Cir. 2005) (Tjoflat, J. specially concurring). *See also*, United States v. Huerta-Rodriguez, 355 F. Supp.2d 1019, 1023 (D. Neb. 2005) ("post-Booker, the Sentencing Reform Act (SRA) requires the sentencing court to regard the guidelines' ranges as one of the many factors to consider in determining the sentence").

The fact is that the Guidelines, while proclaiming the goal of uniformity,

sometimes fail to accomplish that goal when the sentence is based primarily on drug quantity. The Constitution Project recognized as much.[1] The Project's Sentencing Initiative report concludes that the Sentencing Guidelines "place excessive emphasis on quantifiable factors such as monetary loss and drug quantity, and not enough emphasis on other considerations such as the defendant's role in the criminal conduct."[2] In its report Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, at 50, the United States Sentencing Commission recognized the criticism of the over-reliance on drug quantity: "Drug quantity has been called a particularly poor proxy for the culpability of low-level offenders, who may have contact with significant amounts of drugs, but who do not share in the profits or decision-making." The end result is that the Guidelines produce sentences that, while uniform by the standards of the Guidelines, sometimes sentence those minimally involved much like those who are central figures in the crime.[3]

The goals set forth in §3553(a)(2) consist of the "need for the sentence imposed":

---

[1] It is a group which describes itself as "a bipartisan nonprofit organization that seeks consensus on controversial legal and constitutional issues thorough a unique combination of scholarship and activism," www.constitutionproject.org/index.cfm, Its Sentencing Initiative Project includes such preeminent conservative jurists as United States Supreme Court nominee Samuel Alito and United States District Court Judge Paul Cassel, author of the decision in United States v. Wilson, 350 F.Supp.2d 910 (D. Utah 2005).

[2] http://www.constitutionproject.org/article.cfm?messageID=101.

[3] Even the uniformity of sentencing under the Guidelines is probably overstated. According to the United States Sentencing Commission's 2003 Sourcebook of Federal Sentencing Statistics, which presents the most current statistics available, the average sentence in the Northern District of Florida for drug trafficking offenses was 64% higher than the national average (131.5 months vs. 80.1 months).

3

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational, training, medical care, or other correctional treatment in the most effective manner

It is hard to be precise in meeting these goals. In this case, Mr. Grant, who is a criminal history III due to his addiction to drugs and prior possession charges, is facing a guideline range of 97 months to 121 months. *See* ¶ 62 PSR. Thus, this court will necessarily be imposing a very significant sentence. Accordingly, any sentence of incarceration will surely promote the goals of reflecting the seriousness of the offense, affording adequate deterrence, and protecting the public. The point, though, is that when the other factors of § 3553(a) are considered - in particular, the "nature and circumstances of the offense" (§ 3553(a)(1)) - it is apparent that the goals of federal sentencing can be accomplished with a sentence less than that called for by the Guidelines.

### I.    The History and Characteristics of the Defendant

Mr. Grant is fortunate to have a strong foundation rooted in family. The letters of support (Attached as **Exhibit A**) show that his life revolves around family and good friends. Mr. Grant's parents are solid citizens who have worked hard their entire lives; been active in their Baptist church; contributed to their Holly Hill community; and have

been happily married for 33 years. Mr. Grant's family is extremely close knit and they are prepared to help him battle his addiction and move his life in the right direction.

Besides his parents, Mr. Grant's aunts, uncles, cousins and friends have written this Honorable Court describing the man they know as generous, thoughtful, and kind. These letters show a man dedicated to helping others, being a good father and a good son. All of the letters show that Mr. Grant has a strong support system which, as this Court knows, is critical to his future success.

Moreover, Mr. Grant has two children that he has always loved and provided for: Shamya Grant (age 12); and, Jamyria Brown (age 10). Mr. Grant has provided for his children through the years, even though he has not been court ordered to pay child support. He has been an active, loving and involved parent, despite his struggles with substance abuse.

### A. Mr. Grant's Substance Abuse

As noted in the PSR in paragraphs 54 through 56; the Defendant's criminal history (Paragraphs 26, 28, and 29); and as confirmed by the Probation Officer, Mr. Grant has a confirmed history of drug and alcohol abuse. When Mr. Grant was 16, he began smoking marijuana and his addiction to marijuana continued until he was arrested for this offense and incarcerated. Throughout his life Mr. Grant has experimented with many drugs including MDMA (ecstasy); Xanax (benzodiazepine) and Molly (powdered form of MDMA). He began drinking and abusing alcohol at the age of 18 and he continuously

5

abused alcohol until the day he was arrested for this offense. Indeed, during his entire adult life he has abused alcohol almost daily and has experienced black outs from binge drinking.

When Mr. Grant was 19 he began using cocaine and he quickly became an addict. Cocaine has since been his drug of choice using it daily during his entire adult life until he was placed in custody for the instant offense. He snorted between one to two grams of cocaine daily. Even after nearly overdosing, Mr. Grant was unable to break this habit. When he tried to stop using cocaine on his own, he was successful for very short one or two days of sobriety. Unfortunately, he has *never* received any drug treatment or counseling.

Without a doubt, Mr. Grant's drug habit caused him to make the decision to be a drug courier. Likewise, being a drug courier fueled his drug habit. Although Mr. Grant has three prior drug possession convictions, he is unfortunately someone who has never been ordered to receive drug treatment. To begin the process of his rehabilitation, Mr. Grant has requested drug treatment while incarcerated at the Charleston County Detention Center. There is, however, a waiting list for this program and he still has not been given the opportunity to participate. On June 28, 2016, Mr. Grant requested that he be allowed to participate in the Bridge Program. Fortunately, he has a family that is ready, willing and able to assist him in this endeavor and is as committed to his recovery as he is.

B. **Mr. Grant's Resulting Offense Level and Criminal History Category Severely Over-Represents His Past Conduct.**

The guidelines do authorize the court to depart down when the Guidelines overstate the defendant's prior criminal record. In Mr. Grant's case, a downward departure under § 4A1.3(b) or, in the alternative a downward variance, is warranted. An offense level of 28 and criminal history category of III, resulting in an advisory guidelines range of 97 to 121 months, "substantially over-represents the seriousness of Mr. Grant's criminal history," and also substantially over-represents "the likelihood that Mr. Grant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). Mr. Grant's criminal history is based upon three convictions for personal possession of cocaine and one conviction for criminal domestic violence which occurred when he was 21 years old (11 years ago) while he was addicted to and under the influence of cocaine. This conduct *technically* renders Mr. Grant a criminal history 3, but it certainly does not make him that in *substance*. These offenses do not show Mr. Grant to have made a career of crime: the convictions all are based upon events occurring while he was addicted to cocaine and involve the personal use of cocaine. Accordingly, a downward departure under § 4A1.3(b) supports a downward departure in criminal history category for Mr. Grant.

While § 4A1.3(b) does not specifically mention a corresponding departure in the defendant's offense level, the drug weight being attributed to Mr. Grant by the Probation Office includes drug weights from the entire conspiracy, much of which did not directly involve Mr. Grant. As noted in the Objections to the PSR, the vast majority of the cooperating witnesses have never seen Mr. Grant or dealt with him. When considering

7

only his direct involvement, Mr. Grant should be held accountable for approximately 8 kilograms of cocaine as opposed to the 173.666 kilograms as the Probation Office contends. These circumstances alone warrant a downward departure from the offense level.

### C.    Work History and Ability to Work

The overwhelming majority of individuals who are involved in drug conspiracies like the one here do not work. They become engrossed in drug conspiracies to support a drug habit or a certain type of lifestyle. Mr. Grant has worked construction for most of his adult life. He has obtained on-the-job experience and skills in construction, cement work, carpentry, brick masonry, landscaping, and restaurant work. He has been certified in scaffolding and operating heavy machinery and equipment.

Although some of his employment verification requests were not returned, the Court should note that some contractors pay individuals off the books and do not keep records of employment. This fact should not hinder the Court's consideration of Mr. Grant's work history, abilities or efforts.

The skills that Mr. Grant possesses are beneficial to a Defendant requesting a variance because it allows a Sentencing Court to be comfortable knowing that a Defendant who has performed these jobs is responsible and capable of following directions from the Probation Office. Moreover, Mr. Grant possesses skills which are in great need at this time due to the rebuilding needs in South Carolina after Hurricane Matthew.

## II.     The Nature and Circumstances of the Offense

The "nature and circumstances of the offense" 18 U.S.C. § 3553(a)(1), is a consideration that justifies a lower sentence in Mr. Grant's case. Mr. Grant was a drug courier and drug user at the bottom rung of the totem pole. There is no evidence that Mr. Grant shared in the proceeds of the conspiracy which should benefit him for sentencing purposes. Mr. Grant was, in fact, used as a courier by others due to the fact that he desperately needed to support his drug habit.

### A.     Current Department of Justice Policy

It is undisputed that Mr. Grant's role in the offense was that of a low level, non-violent, drug courier or mule. There is no evidence that he profited from his offense or had any proprietary interests in the drugs being transported. In the overall conspiracy, Mr. Grant was a very low, non-violent player on the totem pole which should weigh greatly in this Court's sentencing decision.

Indeed, recent Department of Justice Policy advocates the need for sentencing reform to ensure that low-level, non-violent drug offenders like Mr. Grant are given lower sentences. The Holder Memorandum was issued on August 12, 2013 to address among other things the need for sentencing reform for low-level, non-violent drug offenses just like Mr. Grant's offense. Because no mandatory minimum sentence applies in Mr. Grant's case, the undersigned acknowledges that the Holder Memorandum does not directly apply. However, General Holder's statement that "long sentences for low-level, non-violent drug offenses do not promote public safety, deterrence, and

rehabilitation" is instructive because for someone like Mr. Grant who is on the lowest rung of the ladder for culpability purposes, *any* sentence of incarceration is "long."

In a speech to the American Bar Association, General Holder was even more direct calling mandatory minimums "draconian" and asking Congress to reform a system which can "breed disrespect" for itself. "When applied indiscriminately, they do not serve public safety." See http://www.huffingtonpost.com/2013/08/12/eric-holder-mandatory-minimum_n_3744575.html. General Holder discussed how, over time, charging decisions made by U.S. Attorneys' offices throughout the country became overly-focused on punishment. General Holder mentioned that rehabilitation should be an aspect of charging decisions and the ultimate sentence a particular Defendant receives.

Furthermore, Deputy Attorney General Sally Yates testified to Congress about the need for sentencing reform. She testified on October 19, 2015 before the Senate Judiciary Committee in support of the Sentencing Reform Act and Corrections Act of 2015 to the following:

> But sentencing reform should permit a certain type of defendant – ***a low-level, non-violent drug defendan***t – to demonstrate to the sentencing judge that he or she should not be subject to the most onerous sentences. These modest revisions will help ensure that, in those cases, the punishment more closely matches the crime. In the long run, this should result in a lower Federal prison population, which will allow the Department to reallocate funds to other pressing needs.
>
> But in addition to the fiscal costs, there are human costs to our current system as well.
>
> We all know the toll that illegal drugs have taken on our society. The Justice Department aggressively pursues high-level drug traffickers because ***we know how these substances harm those with substance use***

10

> *disorders*. We recognize the many lives ruined by the drug trade – from rural villages in Colombia and Mexico to the streets of Oakland and Newark.
>
> But the ***harms of drug addiction*** are not necessarily solved by locking up, for as long as possible, everyone who touches the drugs.

The Defendant submits that Mr. Grant is exactly the type of Defendant that General Holder and Deputy Attorney General Yates addressed. Indeed, in this case, a sentence below the Guidelines and one that provides for rehabilitation, meets the language of the Holder Memorandum; the Yates testimony; as well as the requirements of 3553. This case is, in fact, a prime example of the Guidelines providing too harsh of a sentence for a non-violent, low level drug offender.

### B.    Mr. Grant's Role in the Offense

As recognized by some courts, consideration of the role of the defendant is often overshadowed by the emphasis the Guidelines place on drug quantity. *See*, e.g., United States v. Milne, 384 F.Supp.2d 1309, 1312 (E.D. Wis. 2005) ("With their almost singular focus on loss amount, the guidelines sometimes are insufficiently sensitive to personal culpability"); United States v. Ennis, 468 F.Supp.2d 228, 230 (D. Mass. 2006) ("And since the Guideline drafters did not bother to describe the reason for making quantity talismanic, the sentencing purposes advanced by the quantity guideline, § 2D1.1, or what to do when quantity-driven sentences are wholly at odds with any rational sentencing scheme, judges were left 'just to weigh the drugs and mechanically compute the offense level.'"); United States v. Adelson, 441 F.Supp.2d 506, 509 (D.N.Y. 2006)("As many

11

have noted, the Sentencing Guidelines, because of their arithmetic approach and also in an effort to appear 'objective,' tend to place great weight on putatively measurable quantities such as the weight of drugs in narcotics cases . . . without, however, ever explaining why it is appropriate to accord such huge weight to such factors.").

Understanding that the Probation Office has already reduced his guideline range by giving him a decrease for minor role, the Court should consider that Mr. Grant's role was especially limited. He made trips back and forth to Atlanta, Georgia and there is no evidence in the record of an agreement for him to be compensated. His limited participation in the offense is one of the "circumstances of the offense" that the Court is obligated to consider pursuant to 18 U.S.C. § 3553(a)(1). That is the case, regardless of the Guidelines calculations:

> Judges may not simply assume that § 2D1.1 advances the purposes of sentencing spelled out in 18 U.S.C. § 3553(a). Whether it does do so or not depends upon the circumstances of the individual case. Moreover, the failure to consider those circumstances is not simply unfair; it may well be unconstitutional.

United States v. Ennis, 468 F. Supp. 2d at 230. The Guidelines' place an undue emphasis on drug quantity in Mr. Grant's case. Accordingly, this forms the basis for this Court to limit the weight given the Guidelines and provides justification for giving closer consideration to his limited role.

### III.     The Role of the Advisory Sentencing Guidelines

There has been a continuing debate among the courts as to how much weight should be given to one of the listed factors, the Sentencing Guidelines. However, a "district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." United States v. Hunt, 459 F.3d 1180, 1185 (11th Cir. 2006). Mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases are now potentially relevant in every case.

Likewise, a sentence imposed outside of the Guidelines' scheme does not require extraordinary circumstances:

> Before Booker, we recognized that district courts were required to sentence within the guideline range except in unusual cases, United States v. Johnson, 347 F.3d 635, 640 (7th Cir. 2003), and anything but a loose comparison to pre-Booker departure cases would vitiate the post-Booker discretion that sentencing courts enjoy. All that is necessary now to sustain a sentence above the guideline range is "an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant." Dean, 414 F.3d at 729.

United States v. Castro-Juarez, 425 F.3d 430, 436 (7th Cir. 2005). In the case at hand, Mr. Grant is deserving of a below Guideline sentence and this Court has the absolute discretion to order such a sentence.

13

## IV.     The Other Factors of § 3553(a)

The other factors listed in the statute support a below guideline sentence, as well. Given the nature of his criminal history, the non-violent nature of his offense, the limited role he played, and his desire to be rehabilitated through drug counseling, a lower sentence does "reflect the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A). A lower sentence will, in the broad sense, "afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(B).  The nature of his criminal history, his family network of support and his desire to engage in drug and alcohol counseling, all demonstrate that the likelihood of recidivism is low and that an extremely long period of incarceration is not necessary "to protect the public from further crimes of the defendant."  § 3553(a)(2)(C). Indeed, if Mr. Grant is rehabilitated through drug counseling, his criminal history demonstrates that there will be no further crimes of the defendant because all of his previous crimes were related to drug addiction.

## V.     Conclusion

For the reasons set forth above and as will be presented at his sentencing hearing, Mr. Grant respectfully requests a downward departure under § 4A1.3 of the advisory guidelines and/or a downward variance pursuant to the factors set forth in 3553(a) and for all of the reasons set forth above.

                                    Respectfully submitted,

                                    s/Deborah B. Barbier_____

                                    Deborah B. Barbier, LLC
                                    FED ID. NO. 6639
                                    1811 Pickens Street
                                    Columbia, SC 29201
                                    803-445-1032
                                    Email: dbb@deborahbarbier.com
                                    Attorney for Defendant

Columbia, South Carolina
October 23, 2016